IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DIMARCO CONSTRUCTORS, LLC, ) <br> Plaintiff, ) <br> v. ) <br> ) <br> STAUNTON PLAZA, LLC, ) <br> Defendant, ) <br> ) <br> ) <br> STAUNTON PLAZA, LLC, ) <br> Counterclaim Plaintiff, ) <br> v. ) <br> ) <br> DIMARCO CONSTRUCTORS, LLC, ) <br> Counterclaim Defendant, ) <br> ) <br> ) <br> MARCH, INC., ) <br> Third Party Plaintiff, ) <br> v. ) <br> ) <br> FROEHLING & ROBERTSON, INC., ) <br> Third Party Defendant. ) | Civil Action No. 5:09cv00001 <br><br><br><br> MEMORANDUM OPINION <br><br><br><br> By: Samuel G. Wilson <br> United States District Judge |

This is a diversity suit[1] by DiMarco Constructors, LLC ("DiMarco") against Staunton

Plaza, LLC ("Staunton Plaza") arising out of a construction project ("the Project") at a site

owned by Staunton Plaza. Staunton Plaza retained March, Inc. ("March") to construct a building

---

[1] Jurisdiction over the dispute between Staunton Plaza and DiMarco is proper pursuant to 28 U.S.C. § 1332 because Staunton Plaza is a limited liability company whose members are all citizens of Georgia, DiMarco is a New York limited liability company whose members are not Georgia citizens, and the amount in controversy exceeds $75,000, exclusive of interests and costs. The dispute between F&R and March, as the parties have construed it thus far, falls within ths court's supplemental jurisdiction under 28 U.S.C. § 1367(a) because March's claims against F&R are so related as to "form part of same case or controversy." Though F&R and March are both Virginia corporations with their principal places of business in Virginia, the court's exercise of supplemental jurisdiction is proper under § 1367(b) because parties other than Plaintiff DiMarco joined both March and F&R in the lawsuit. See United Capital Ins. Co. v. Kapiloff, 155 F.3d 488, 492 (4th Cir. 1998) ("[T]he limitation of § 1367(b) applies only to *plaintiffs'* efforts to join nondiverse parties.")

pad on the site and DiMarco to build a retail building on the pad. March, in turn, retained Froehling & Robertson, Inc. ("F&R") to certify that the pad conformed to the Project's plans and specifications. After completion, the pad and building suffered settlement damage, and a dispute arose between Staunton Plaza and DiMarco over payment of repair costs and contract fees, resulting in the current suit. Staunton Plaza has joined March as a party, asserts a breach of contract against it, and seeks to recover the cost of repairs to the building. March, in turn, has impleaded F&R. March alleges that any amount that it might owe Staunton Plaza arises from F&R's faulty certification of the building pad. The matter is currently before the Court on F&R's motion for summary judgment, or in the alternative, to dismiss. The court denies F&R's motion for summary judgment and grants in part and denies in part its motion to dismiss.

## I.

Staunton Plaza owned a building site at 1015 Richmond Road in Staunton, Virginia and planned to build a retail building there. Staunton Plaza contracted with March to build the building pad for the Project. To carry out its contract with Staunton Plaza, March retained F&R to certify that it had constructed the building pad in accordance with Project plans and specifications. Skip Lowe of March discussed the Project with F&R Senior Engineer John Pappas, and Lowe requested that F&R perform the relevant tests and certify that March's building pad complied with Project plans and specifications. Pappas drafted a document he intended to serve as the written agreement for materials testing and/or inspection services and purportedly forwarded that document to March. The document includes a description of the Project work site and a reference to the plans and specifications for the Project. It also incorporates several "standard" terms and conditions, including an express indemnity provision

and a time-bar provision which states that any claim arising out of the performance of services under the agreement must be brought within two years of the act or omission giving rise to that claim. (Mot. Summ. J. Ex. A.) Pappas purportedly signed this document on May 5, 2005 and sent it to March. John Johnston, March's current owner and CEO, states that March and F&R "have had a previous course of dealings which did not include written contracts," and that he "ha[s] nothing in the file to suggest that [the Project] was handled any differently." (Johnston Aff. 2.) F&R has adduced no evidence that March signed the document and returned it. F&R began visiting March's work site and testing the pad, and on September 28, 2005 F&R certified that March had prepared the pad as planned. F&R's certification letter stated that "[its] services have been performed in accordance with generally accepted geotechnical engineering practices," and the letter displayed the stamp of an F&R senior engineer licensed in Virginia.

Staunton Plaza contracted separately with DiMarco to build the building on the pad. After the building was completed, differential settlement damaged the pad and the building. Staunton Plaza declined to pay DiMarco the full amount specified in their contract, and DiMarco sued Staunton Plaza for breach of contract to collect the remainder. Staunton Plaza counterclaimed against DiMarco for the cost of repairing the building and the pad, joined March as a party pursuant to Fed. R. Civ. P. 13 and 20, and asserted a claim for breach of contract against March. Staunton Plaza's claim against March alleges that March's work was defective and that the pad failed to comply with Project specifications, and Staunton Plaza seeks recovery for the cost of repairs to the pad and the building.

March impleaded F&R under Fed. R. Civ. P. 14. March titles its claim "indemnification" and seeks "full indemnification and/or contribution" should the court enter judgment for

Staunton Plaza in its claim against March. It alleges that a right of indemnification or contribution arises because F&R "was to use its expertise to confirm that the pad met the required specifications" and because "[i]f the pad did not meet the required specifications [F&R] would breach [its] duties under the agreement by issuing a false certification." (Third Party Compl. 4.) According to March, "[a]ll" of Staunton Plaza's allegations against March "arise, if at all, from F&R's certification of the pad." (Third Party Compl. 4.)

## II.

F&R argues that it is entitled to summary judgment[2] on March's claims for indemnification or contribution because the claims are time-barred under the document that F&R drafted and sent to March. March argues that this document does not accurately represent their oral contract and notes that no March representative signed it. The court finds genuine issues of material fact as to whether the document superceded or accurately memorialized the parties' oral contract and accordingly denies F&R's motion for summary judgment.

Because this court is exercising diversity jurisdiction, it applies Virginia law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "It is elementary that mutuality of assent – the meeting of the minds of the parties – is an essential element of all contracts." Phillips v. Mazyck, 643 S.E.2d 172, 175 (Va. 2007) (quoting Lacey v. Cardwell, 217 S.E.2d 835, 843 (Va. 1975)). Virginia courts "ascertain whether a party assented to the terms of a contract from that party's words or actions, not from his or her unexpressed state of mind." Id. Virginia courts

---

[2]Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the nonmoving party. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007).

4

require an objective manifestation of consent to contract terms; "[a] party's silence . . . is insufficient to show its intention to be bound by the terms of a contract." Id. at 176.

Because the existence of an oral contract between the parties is not in dispute, this court must only determine whether the time-bar provision in the document was part of the parties' oral contract or whether the parties reached a mutual understanding that the document – including the time-bar provision – would supercede the oral contract. F&R alleges that its representative discussed certification work for the Project with a March employee, but does not allege that these parties discussed a time-bar provision, or that March objectively manifested its assent to such a provision. No March representative signed the document that F&R purportedly submitted to March, and F&R inspected the building pad and certified the work, nevertheless. In the light most favorable to March, therefore, there is a genuine issue of material fact as to whether the document F&R purportedly submitted to March accurately memorialized or superceded the parties' oral contract. Accordingly, the court denies F&R's motion for summary judgment.[3]

### III.

F&R argues alternatively that the court should dismiss[4] March's implied contractual

---

[3]F&R also argues that the indemnity provision incorporated in the written agreement prevents March from asserting implied contractual indemnity. This argument fails because the court finds genuine issues of material fact as to whether this written agreement accurately memorializes or supercedes their oral contract.

[4]As the Supreme Court has recently noted:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

5

indemnification claim because the parties' contract does not give rise to unique factors or special relationship necessary for implying contractual indemnification. March counters that F&R, as a professional engineering firm, owed common law duties that give it a right of action against F&R. The court finds that March has not pointed to unique factors or to a special relationship that would give rise to implied contractual indemnification in Virginia, and accordingly grants F&R's motion to dismiss as to the indemnification claim.

"Although an implied right to indemnity may be read into some contracts, only unique factors or a special relationship between the parties give rise to such a right." Transdulles Ctr. Inc. v. USX Corp., 976 F.2d 219, 228 (4th Cir. 1992) (applying Virginia law); see also Bd. of Dirs. of Birdneck Villas Condo. Assoc. v. Birdneck Villas, LLC, 73 Va. Cir. 175, 180 (Va. Cir. Ct. 2007) (applying the unique factors and special relationship standard). "In the contracts context, equity is more hesitant to imply an indemnity right, because if the parties desired to create an indemnitor-indemnitee relationship, they could have done so in the contract." Hanover Ins. Co. v. Corrpro Cos., Inc., 312 F.Supp.2d 816, 821 (E.D. Va. 2004); e.g., Transdulles, 976 F.2d at 228 (holding that an architect's obligation to satisfy county regulations when designing a building does not give rise to a right to implied contractual indemnification when the builder must later pay the building owner for the cost of bringing the building into compliance with those

---

> Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted). The court accepts factual allegations as true, Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009), but this "tenet . . . is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949.

6

regulations); Stone Ridge Condo. Unit Owner's Assoc. V. J.M. Turner & Co., Inc., 62 Va. Cir 280 (Va. Cir. Ct. 2003) (finding no special contractual relationship between a condominium association and the architect who designs the condominiums); Birdneck Villas, 73 Va. Cir. at 175 (finding no special contractual relationship between a general contractor and parties who provided framing materials, stucco, and vinyl siding for a construction project).

March's complaint alleges only that F&R was to use its expertise to confirm that the pad conformed to Project plans and specifications. Virginia courts have not recognized this as a unique factor or special relationship giving rise to a contractually implied right of indemnification. Because March has failed to identify unique factors or a special relationship sufficient to give rise to an implied contractual right to indemnity under Virginia law, the court grants F&R's motion as to this claim.[5]

---

[5] The court makes no findings regarding the viability of an equitable indemnification claim by March against F&R. See Carr v. Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995) (distinguishing an equitable indemnification claim from an implied contractual indemnification claim). "Equitable indemnification arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another. Equitable principles allow the innocent party to recover from the negligent actor for the amounts paid to discharge the liability." Id. However, "[a] prerequisite to recovery based on equitable indemnification is the initial determination that the negligence of another person caused the damage." Id. "'In the normal indemnity situation where . . . no contractual duty to defend exists, no duty to do anything arises until the alleged indemnitee is adjudged liable.'" Med-Therapy Rehab. Servs., Inc. v. Diversicare Corp of Am., 16 F.3d 410 (4th Cir. 1994) (Table) (quoting Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1169 (7th Cir. 1969). Therefore, "[a]t a minimum, under Virginia law, a properly pled indemnity claim must allege that the defendant caused some direct harm to a third party *and that the plaintiff discharged the resulting liability from this harm*." Canal Ins. Co. v. Leganon Ins. Agency, Inc., 504 F.Supp.2d 113, 117 (W.D. Va. 2007) (emphasis added). Because there has been no adjudication of March's liability to Staunton Plaza, and thus March cannot allege that it discharged liability resulting from F&R's alleged harm, an equitable indemnification claim by March against F&R is not yet ripe. See Cunningham Bros., 407 F.2d at 1165 (finding that no controversy exists between an alleged indemnitor and indemnitee prior to an adjudication of the indemnitee's liability to the injured party).

7

## IV.

F&R also argues that March's contribution claim fails to state a plausible claim to relief. The court finds that, because March does not allege that F&R is a joint tortfeasor, March's claim for contribution fails. Accordingly, the court grants F&R's motion to dismiss March's claim for contribution.

"The right to contribution does not arise out of any express agreement or contract, but is based on broad principles of equity that where two or more persons are subject to a common burden it should be borne equally." Van Winckel v. Carter, 95 S.E.2d 148, 151 (Va. 1956). However, a right to contribution arises only when the injury results from a joint tortfeasor relationship, thus creating a common burden. See Birdneck, 73 Va. Cir. at 179-80 (dismissing a general contractor's contribution claim against parties that provided framing materials, stucco, and roofing on a failed construction project because the general contractor alleged the damage to the buildings was due to the shortcomings of these other parties' work, not a joint tortfeasor relationship between himself and the other parties); Pulte Home Corp. v. Parex, 579 S.E.2d 188, 194 (Va. 2003) (dismissing a general contractor's contribution claim in a construction case because "there is no joint liability for the [homeowner's] claims as between [the general contractor] and [the stucco manufacturer]").

March alleges that all of Staunton Plaza's claims against March arise solely, if at all, from F&R's certification of the building pad, F&R's contractual obligation to March, not from any breach of a duty or other obligation that March owed to Staunton Plaza. Therefore, March has not alleged that F&R was a joint tortfeasor in causing Staunton Plaza's injury, and the court accordingly grants F&R's motion to dismiss as to the contribution claim.

## V.

The court notes that although March's complaint does not state a claim for implied contractual indemnification or contribution, in the light most favorable to March, its complaint does state a simple breach of contract claim, and to that extent, the court denies F&R's motion to dismiss.

To state a claim for relief, a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. "[U]nder Rule 8(a)(2), a 'statement of the claim' is sufficient so long as a plaintiff colorably states facts which, if proven, would entitle him to relief, and the claimant need not set forth any theory or demand any particular relief." Gilbale Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 900 (4th Cir. 1996) (internal quotations and citations omitted). Rule 8's requirements are "not onerous." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 764 (4th Cir. 2003). "[A] complaint meets Rule 8's requirements if . . . the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 348 (4th Cir. 2005). In Virginia, "an action for . . . negligence [in the performance of] professional services while sounding in tort, is an action for breach of contract." Va. Military Instit. v. King, 232 S.E.2d 895, 901 (Va. 1977) ("). See also Fed. Reserve Bank v. Wright, 392 F.Supp. 1126, 1128 (E.D. Va. 1975) ("The Virginia cases seem to indicate that if an architect fails to use reasonable care in the preparation of plans and designs, he may be sued for breach of an implied term in his contract."); Surf Realty Corp. v. Standing, 78 S.E.2d 901, 907 (Va. 1953) ("An architect, in the preparation of plans and drawings, owes to his employer the duty to exercise his skill and ability, his judgment and taste

9

reasonably and without neglect.").

March alleges that it retained F&R to perform tests that would allow it to certify that the pad conformed to Project plans and specifications, that F&R was to use its expertise in the certification, and that F&R would breach its duties under the contract if it issued a false certification. These allegations, coupled with the facts alleged, would be sufficient, if proven, to entitle March to relief, and they sufficiently inform F&R as to the general basis of March's claim.[6] Therefore, although March's complaint does not state a valid claim for either implied contractual indemnity or contribution, it does state a valid claim to relief.

## VI.

For the foregoing reasons, the court **DENIES** F&R's motion to for summary judgment, but **GRANTS** in part and **DENIES** in part its motion to dismiss.

**ENTER:** This 14th day of July 2009.

_____
UNITED STATES DISTRICT JUDGE

---

[6]However, the court makes no findings as to whether this stand-alone breach of contract claim is appropriate for third party practice under Fed. R. Civ. P. 14 or otherwise appropriate jurisdictionally. See Scott v. PPG Indus., Inc., 920 F.2d 927 (4th Cir. 1990) (Table) ('[A] third-party claim may be asserted [under Rule 14] only when the third party's liability is in some way dependant on the outcome of the main claim and the third party's liability is secondary or derivative. It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.")

10